902 P.2d 1077

Sara SINGHAS, Plaintiff–Appellee,

and

Dan Soriano, Individually, and as Personal
Representative of the Estate of Veronica
Soriano, deceased, Plaintiff-in-Interven-
tion-Appellee,

v.

NEW MEXICO STATE HIGHWAY
DEPARTMENT, Defendant–
Appellant.

No. 15860.

Court of Appeals of New Mexico.

July 13, 1995.

Certoriari Granted Sept. 11, 1995.

Stephen Durkovich, Kevin Martinez, Albuquerque, for Plaintiff–Appellee.

Edward L. Chavez, David J. Stout, Carpenter & Chavez, Ltd., Albuquerque, for Plaintiff-in-Intervention–Appellee.

Katherine E. Tourek, Lisa T. Mack, Bradley & McCulloch, P.A., Albuquerque, for Defendant–Appellant.

## OPINION

FLORES, Judge.

The New Mexico State Highway Department (the Highway Department) appeals from a tort judgment finding the Highway Department ten percent at fault for a highway automobile accident involving two employees of the New Mexico Public Defender's Department (the Public Defender), who were traveling within the scope of their employment. The dispositive issue on appeal is whether the exclusive-remedy provisions, NMSA 1978, § 52–1–6(C)–(E) (Repl. Pamp.1991) (effective Jan. 1, 1992) and NMSA 1978, § 52–1–9 (Repl.Pamp.1991), of the Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (Repl.Pamp.1991 & Cum.Supp.1994) (the Act), prohibit recovery against the Highway Department in tort. We hold that the exclusive-remedy provisions apply to prohibit recovery, and we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. Plaintiff Sara Singhas (Singhas) and Veronica Soriano, both employees of the Public Defender, and Veronica's daughter, Michele, were en route to a mental health task force meeting in Las Cruces on July 8, 1992, when Veronica's vehicle struck another vehicle driven by Gilbert Leyba (Leyba). Veronica (the decedent) was killed and her two passengers were injured in the accident.

Singhas filed a negligence action against Leyba and the Highway Department, alleging that the Highway Department's failure to properly stripe and sign the highway was a

proximate cause of her injury. Subsequently, Dan Soriano (Soriano) intervened as personal representative of the decedent's estate and as next friend of his minor daughter, Michele. Soriano also sought damages individually for his loss of consortium.

The Highway Department moved for summary judgment on the basis that the Act's exclusive-remedy provisions, §§ 52–1–6(C)–(E) and 52–1–9, barred the tort claims. The trial court denied the motion, but certified the issue for interlocutory appeal. The interlocutory appeal was subsequently denied by this Court.

The Highway Department stipulated to judgment in favor of Singhas and Soriano, reserving the right to appeal the validity of the judgment. An amended stipulated judgment simply added an explicit reservation of this right. The stipulated judgment held the Highway Department liable for ten percent of the damages recovered: $127,500 (decedent's estate); $45,500 (Singhas); and $7,000 (Soriano). Michele's claims and all claims against Leyba were settled, and neither is a party to this appeal.

The Highway Department raises the following issues on appeal: (1) whether the Act's exclusive-remedy provisions apply because the employer was the State of New Mexico rather than the Public Defender; (2) whether the "dual persona" doctrine operates as an exception to the exclusivity rule in this case; and (3) whether the exclusivity rule precludes Soriano's individual claim for damages.

## DISCUSSION

### Issue One: The State of New Mexico is the Employer

■ According to the amended stipulated judgment, the Public Defender and the Highway Department are agencies of the State. The judgment, however, does not determine whether the Public Defender or the State of New Mexico is the employer for purposes of the Act.

It is undisputed that Singhas was injured, and the decedent was killed, during the course of their employment with the Public Defender. It is also undisputed that the State has paid benefits pursuant to the Act for the injury and death. The issue is how far up the chain of command one goes to determine who is the employer. This feature distinguishes the instant case from the authority cited by the parties. *See Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 102–03, 739 P.2d 968, 971–72 (1987) (whether Triple B was employee or independent contractor); *Dibble v. Garcia*, 98 N.M. 21, 23–25, 644 P.2d 535, 537–39 (Ct.App.) (whether Dibble was employee or independent contractor), *cert. denied*, 98 N.M. 50, 644 P.2d 1039 (1982).

The parties set forth the statutory organization of each agency as evidence of control to establish whether the employer is the State or its individual agencies. *See Triple B Corp.*, 106 N.M. at 102, 739 P.2d at 971 (employer has right to exercise control over results and details of work to be accomplished); *Dibble*, 98 N.M. at 23, 644 P.2d at 537 (Act describes through terms " 'employer and employee' " the conventional relationship between an employer who pays wages to an employee for labor); SCRA 1986, 13–403 (Repl.1991) ("[E]mployer is one who has another perform certain work and who has the right to control the manner in which the details of the work are to be done, even though the right of control may not be exercised.").

The Highway Department argues that the employing agencies within the State personnel system exercise authority delegated to them by the State as employer. Singhas attempts to distinguish the organization of the Highway Department from the Public Defender to demonstrate that the agencies are separate and independent, and that only the Public Defender meets all indicia of an employer with authority to hire, fire, supervise, and promote. We are not persuaded by these indicia of independent control when employees of the two agencies have access to another state entity to grieve personnel actions, *see* NMSA 1978, §§ 10–9–1 to –25 (Repl.Pamp.1992) (Personnel Act); are paid by the State from state funds, *see* NMSA 1978, §§ 9–6–1 to –3, –5 (Repl.Pamp.1994) (Department of Finance and Administration); NMSA 1978, § 10–7–2 (Repl.Pamp.1992) (de-

partment to issue regulations governing payment of salaries); and are employed by agencies of the executive department, headed by gubernatorial appointees, *see* NMSA 1978, § 31–15–4 (Cum.Supp.1994) (chief public defender) and NMSA 1978, § 67–3–2 (Cum. Supp.1994) (highway commission). *See also Colombo v. State*, 3 Cal.App.4th 594, 5 Cal. Rptr.2d 567, 569–70 (1991) (factors court found persuasive in concluding that civil service employees of different state departments were state employees as a matter of law for purposes of the exclusive-remedy provision of the workers' compensation statute), *review denied* (Feb. 13, 1992).

 The Act is a product of legislative balancing of the employer's assumption of liability without fault with the worker's receipt of benefits. *Johnson Controls World Servs., Inc. v. Barnes*, 115 N.M. 116, 118, 847 P.2d 761, 763 (Ct.App.), *cert. denied*, 115 N.M. 79, 847 P.2d 313 (1993). That balance could be significantly altered by a determination that the individual agency, rather than the state, is the employer. Therefore, we seek specific guidance from the Act itself to indicate whether such a conclusion is intended or warranted. *See Williams v. Amax Chem. Corp.*, 104 N.M. 293, 294, 720 P.2d 1234, 1235 (1986) (sagacity of making changes in workers' compensation statutes, or rights created thereunder, generally held to be beyond the province of the court), *overruled on other grounds by Michaels v. Anglo Am. Auto Auctions, Inc.*, 117 N.M. 91, 92, 869 P.2d 279, 280 (1994).

According to the provisions of the Act relating to workers' compensation coverage by state agencies, all state agencies and departments are synonymous with the State of New Mexico. Section 52–1–3. The legislature has not attempted to distinguish the various state agencies and departments from the State itself, a feature that we find significant. *See Holody v. City of Detroit*, 117 Mich.App. 76, 323 N.W.2d 599, 602 (1982) (separate agencies of city not separate employers); *see also Osborne v. Commonwealth*, 353 S.W.2d 373, 374–75 (Ky.1962) (commonwealth was one employer as matter of law when statute made no attempt to distinguish ministerial agencies from com-

monwealth itself); *Wright v. Moore*, 380 So.2d 172, 173 n. 1 (La.Ct.App.1979) (regardless of which agency employs worker, worker is state employee when legislature has not subdivided state employment according to agency or department), *cert. denied*, 382 So.2d 164 (La.1980).

For the above reasons, in this case, we conclude as a matter of law that the State is the employer. *Cf. Jelso v. World Balloon Corp.*, 97 N.M. 164, 167, 637 P.2d 846, 849 (Ct.App.1981) (where facts undisputed, question of whether claimant was a worker at the time of her injury or only a volunteer is question of law). Consequently, the exclusivity rule applies to the tort claims asserted in this case, unless some exception to the rule applies. *See* §§ 52–1–6(C)–(E), –9 (exclusive-remedy provisions).

### Issue Two: The "Dual Persona" Doctrine Does Not Apply

 When an employer occupies a "dual persona" status, the exclusivity rule does not prohibit recovery against the employer as a third-party tortfeasor. *See Salswedel v. Enerpharm, Ltd.*, 107 N.M. 728, 731, 764 P.2d 499, 502 (Ct.App.1988) (recognizing "dual persona" doctrine). Many of the arguments advanced by the parties in support of the employer-identity issue are relevant to our analysis of whether the "dual persona" doctrine is applicable in this case. As the Highway Department notes, the primary issue is whether the State can be both employer and third-party tortfeasor when the tort was committed by a department other than the employing agency.

 We determine whether the trial court correctly applied the "dual persona" doctrine to the facts. *See Ledbetter v. Webb*, 103 N.M. 597, 602–03, 711 P.2d 874, 879–80 (1985) (appellate court not bound by erroneous conclusions of law). Although factfinding may be required to invoke the doctrine, where the facts are undisputed and the elements of the "dual persona" doctrine are not met, a court should determine as a matter of law that an employer is immune from tort liability. *See Salswedel*, 107 N.M. at 731, 764 P.2d at 502; *Jelso*, 97 N.M. at 167, 637 P.2d at 849 (issue

of employment decided as a matter of law where facts were undisputed).

The trial court's memorandum decision shows that the court considered the "dual persona" doctrine in the context of the statutory origins and duties of the Highway Department and the Public Defender. The trial court concluded that the Highway Department may not as a matter of law take shelter in the Act's exclusivity provisions under the undisputed facts of the case because the Highway Department is engaged in a " 'separate endeavor' " and is a " 'separate legal entity' " from the Public Defender.

The trial court's rationale appears to merge two different doctrines—the "dual persona" doctrine and the "dual capacity" doctrine. The "dual capacity" doctrine provides that "an employer who occupies toward his employee a second relationship that imposes obligations different from those he has undertaken in his capacity as an employer, may be liable in tort in the event that the employee is injured as a result of the violation of those distinct obligations." 82 Am. Jur.2d *Workers' Compensation* § 67, at 72–73 (1992). To the extent that the trial court focused on the distinct functions of the highway department and the public defender, it appears to be adopting the "dual capacity" doctrine.

■ New Mexico, however, has rejected the "dual capacity" doctrine in favor of the "dual persona" doctrine. *Salswedel,* 107 N.M. at 730–31, 764 P.2d at 501–02. Under the "dual persona" doctrine, "[a]n employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." 2A Arthur Larson, *The Law of Workmen's Compensation* § 72.81, at 14–290.88 (1995). The doctrine should apply only to situations "in which the law has already clearly recognized duality of legal persons, so that it may be realistically assumed that [the] legislature would have intended that duality to be respected." *Id.* at § 72.81(a), at 14–290.93. The "dual capacity" doctrine has lost favor with courts and com-

mentators because it has been subjected "to such misapplication and abuse," *id.* at 14–290.91, that it has undermined the balance between the interests of employer and worker, and because it is simply inconsistent with statutory language that permits claims only against a "person other than [the worker's] employer." Section 52–1–6(E). *See Salswedel,* 107 N.M. at 730–31, 764 P.2d at 501–02; *Hyman v. Sipi Metals Corp.,* 156 Ill.App.3d 207, 209–11, 108 Ill.Dec. 820, 509 N.E.2d 516, 518–20 (1987) (discussing evolution of doctrine in Illinois); Larson, *supra,* 72.81.

■ We note, however, that there is one respect in which judicial decisions applying the "dual capacity" doctrine can be helpful here. The "dual capacity" doctrine is much more permissive of suits against employers than is the "dual persona" doctrine. We fail to see how the "dual persona" test could be satisfied if the "dual capacity" test is not. Therefore, cases denying recovery under the "dual capacity" doctrine are authority for denying recovery under similar circumstances under the "dual persona" doctrine. Thus, we find very persuasive the unanimity of court decisions, whether or not they adopt the "dual capacity" doctrine, in rejecting recovery under facts similar to those present here. *See, e.g., State v. Purdy,* 601 P.2d 258 (Alaska 1979) (tort action against state, for failure to maintain highway properly, by state employee injured in auto accident during the course of employment); *Jones v. Kaiser Indus. Corp.,* 43 Cal.3d 552, 237 Cal. Rptr. 568, 737 P.2d 771 (1987) (tort action against city, for creating and maintaining dangerous intersection, on behalf of police officer killed in accident while on duty); *Indiana State Highway Dep't v. Robertson,* 482 N.E.2d 495 (Ind.Ct.App.1985) (tort action against state, for negligent design, construction, and maintenance of intersection, by state employee injured in auto accident during course of employment); *Wright,* 380 So.2d at 172 (tort action against state, for failure to maintain traffic signal, by state nurse injured in auto accident during course of employment); *Howard v. White,* 447 Mich. 395, 523 N.W.2d 220 (1994) (tort action against city, for failure to maintain traffic signal, by city employee injured in auto acci-

dent during course of employment); *Sutmire v. Andrews,* 108 Pa.Commw.Ct. 90, 529 A.2d 68 (1987) (third-party contribution action against city, for failure to maintain road, by city police officer injured when police car skidded on ice); *Berger v. U.G.I. Corp.,* 285 Pa.Super.Ct. 374, 427 A.2d 1161 (1981) (tort action against city, for improper installation of water line, on behalf of city fireman killed during course of employment); *Spencer v. City of Seattle,* 104 Wash.2d 30, 700 P.2d 742 (1985) (en banc) (tort action against city, for negligent design, construction, and repair of crosswalk, by city employee hit by car during course of employment).

Apparently, no other jurisdiction presented with the issue of exclusivity under comparable facts has applied the "dual capacity" doctrine to allow a public employee to sue another public agency in tort. *See Howard,* 523 N.W.2d at 223 n. 9 (citing cases which supported conclusion reached by *Spencer,* 700 P.2d at 744, that every jurisdiction has rejected the dual capacity doctrine when a state, county, or city employee has sued another governmental department for negligence); *see also Purdy,* 601 P.2d at 260 n. 4 (citing cases from other jurisdictions that persuaded court to reject "dual capacity" doctrine); *Berger,* 427 A.2d at 1163 (citing those jurisdictions which have refused to distinguish one governmental function from another for purposes of exclusivity provisions).

According to Singhas and Soriano, the various agencies of the State are recognized as separate legal entities by virtue of statutory apportionment for the costs of workers' compensation, fiscal control, procedures for filing tort claims, and function. We are not persuaded.

By law, the Risk Management Division (RMD) of the General Services Department provides workers' compensation coverage for all public employees of all state agencies regardless of the hazards of their employment. Section 52–1–3(A). Singhas and decedent were "public employees" of a "state agency" as these terms are defined by law. *See* § 52–1–3(D) (definition of " 'state agency' "); § 52–1–3.1 (definition of " 'public employee' "). The Highway Department is also a "state agency" for purposes of the Act.

Although the Act requires RMD to apportion the cost of coverage among the various state agencies, *see* § 52–1–3(B), this is merely a managerial budgeting tool. The money still comes from state coffers. This provision does not establish a legal status for each state agency that is independent from the state itself.

In addition to workers' compensation benefits, Highway Department and Public Defender employees: receive salaries funded by legislative appropriation, and disbursed by the Department of Finance and Administration, *see* § 9–6–3(A) (creation of department); § 10–7–2 (department to issue regulations governing payment of salaries); are entitled to medical benefits in accordance with the Group Benefits Act, NMSA 1978, §§ 10–7B–1 to –8 (Repl.Pamp.1992); and earn credits for retirement benefits under one state retirement plan in accordance with the Public Employees Retirement Act, NMSA 1978, §§ 10–11–1 to –141 (Repl.Pamp.1992 & Cum. Supp.1994). Therefore, we find no independence among state agencies through fiscal control, even though the Highway Department has bonding authority not available to the Public Defender. This authority allows the Highway Department to finance state highway projects to enable the Highway Department to perform statutory functions. *See* NMSA 1978, § 67–3–59.1 (Cum.Supp. 1994) (bonding authority); NMSA 1978, § 67–3–16 (duties of highway commission). Also, as previously noted, both the Highway Department and Public Defender are headed by gubernatorial appointees, *see* § 31–15–4 (chief public defender) and § 67–3–2 (highway commission), and each agency's control over its own employees is subordinate to the power of a third agency, the state personnel office, *see* §§ 10–9–1 to –25 (Personnel Act).

Tort claims against either the Highway Department or the Public Defender must be funneled through RMD because the State is responsible for the liability arising from actions of its agencies. *See* NMSA 1978, § 41–4–20(A)(2) (Repl.Pamp.1989) (RMD to provide coverage for all state agencies); *Rivera v. King,* 108 N.M. 5, 11, 765 P.2d 1187, 1193 (Ct.App.) (RMD duty to investigate and defend discussed), *certs. denied,* 107 N.M. 785,

765 P.2d 758 (1988). Therefore, the fact that the public sues particular agencies when immunity from tort is waived does not establish that each agency has a legal "persona" distinct from that of the state. *See* NMSA 1978, § 41–4–4 (Repl.Pamp.1989) (immunity provisions and procedures).

With regard to the separate functions of the two agencies, we have already determined that a single legal entity may act in many different capacities. *See Colombo*, 5 Cal.Rptr.2d at 569–70 (fact that two departments perform different functions does not mean that they are separate entities when their employees share common status of state civil service employment under law). The key is whether the State via the Highway Department is a second persona completely independent from and unrelated to the State's status as employer. *See Salswedel*, 107 N.M. at 731, 764 P.2d at 502. The fact that some Highway Department activities may create duties to the public does not indicate that the State is a separate persona when it performs these activities. *See Jones*, 237 Cal.Rptr. at 574–75, 737 P.2d at 777–78 (rejecting liability based on claim that duty breached was duty owed to public, and city employee killed by dangerous condition was member of the public); *Sutmire*, 529 A.2d at 70 (rejecting liability based on claim that duty breached was duty owed to public in general, and consequently to city employee injured); *Henning v. General Motors Assembly Div.*, 143 Wis.2d 1, 419 N.W.2d 551, 558 (1988) (fact that breach of duty to general public caused injury to employee insufficient to support tort claim against employer when no distinct persona implicated).

In this case, although the alleged negligence could have caused the accident whether or not Singhas and decedent were traveling in the scope of their employment, the fact remains that the accident occurred while they were on the job. *See Sutmire*, 529 A.2d at 70 (comparable rationale).

In light of the foregoing, we conclude that the Highway Department is not recognized by law as a legal entity distinct from the State itself. Consequently, because the State cannot be both employer and third party tortfeasor in this case, the "dual perso-

na" doctrine does not apply to extend immunity to the Highway Department under the exclusivity provisions. *See Hammonds v. Freymiller Trucking, Inc.*, 115 N.M. 364, 367, 851 P.2d 486, 489 (Ct.App.1993) (statutes read to facilitate operation and achieve their goals); *Duran v. Albuquerque Pub. Sch.*, 105 N.M. 297, 299, 731 P.2d 1341, 1343 (Ct.App. 1986) (Act "creates rights, remedies and procedures which are exclusive."), *cert. denied*, 105 N.M. 290, 731 P.2d 1334 (1987); *Purdy*, 601 P.2d at 260 (rejecting dual capacity doctrine).

### Issue Three: Soriano's Claim for Loss of Consortium Is Barred

■ Having determined that the Act is Singhas' and decedent's exclusive remedy for damages, a plain reading of the following provision indicates that Soriano's claim for loss of consortium is also barred:

[C]ompliance with the provisions of the ... Act, including the provisions for insurance, shall be, and construed to be, a surrender by the employer and the worker of their rights to any other method, form or amount of compensation or determination thereof or to *any cause of action* at law, suit in equity or statutory or common-law right to remedy or proceeding whatever for or on account of personal injuries or death of the worker than as provided in the ... Act and shall be an acceptance of all of the provisions of the ... Act *and shall bind the worker himself and, for compensation for his death, shall bind his personal representative, his surviving spouse and next of kin....*

Section 52–1–6(D) (emphasis added).

The cause of action for loss of consortium would be a remedy at law barred by the exclusivity provision. *See Romero v. Byers*, 117 N.M. 422, 424–27, 872 P.2d 840, 842–45 (1994) (discussion of loss of consortium as separate tort); *see also Colombo*, 5 Cal. Rptr.2d at 570 (where workers' compensation is injured employee's exclusive remedy, spouse has no independent cause of action against employer for loss of consortium resulting from injury); *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1, 6 (1985) (where workers' compensation is exclusive remedy,

spouse cannot maintain independent cause of action).

## CONCLUSION

Based on the foregoing, the judgment of the trial court is reversed.

IT IS SO ORDERED.

HARTZ and PICKARD, JJ., concur.