[No. B203794. Second Dist., Div. Six. July 24, 2008.]

T.O. IX, LLC, et al., Petitioners, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
ASPHALT PROFESSIONALS, INC., Real Party in Interest.

COUNSEL

Law Offices of David J. Wilzig, David J. Wilzig; and Howard Posner for Petitioners.

No appearance for Respondent.

Law Offices of Ray B. Bowen, Jr., and Ray B. Bowen, Jr., for Real Party in Interest.

OPINION

GILBERT, P. J.—Unlike a cat, the mechanic's lien here has one life, not nine.

Asphalt Professionals, Inc. (API), the real party in interest, contracted with petitioners T.O. IX, LLC, and D and S Homes, Inc., to build a street through a nine-home subdivision developed by petitioners. API alleges that it has not been paid $79,831.18 due under the contract. It recorded a mechanic's lien against each of the nine parcels for the full amount due under the contract: nine separate liens, at $79,831.18 each, to secure API's right to be paid once. After API filed this action to foreclose on the mechanic's liens, petitioners filed a motion to remove the liens as willfully overstated, pursuant to Civil Code section 3118.[1] The trial court denied the motion. Petitioners then applied ex parte for an order permitting them to release all nine parcels from the liens by posting a single surety bond in an amount equal to one and one-half times the total amount of API's claim, as provided in section 3143. The trial court denied the application.

Petitioners filed this petition for a writ of mandate to direct the trial court to grant either the motion to remove the liens or the ex parte application to post a single surety bond. We issued an order to show cause. API filed a return by demurrer and an answer to the writ petition. We overrule API's return by demurrer to the order to show cause. Petitioners have standing to defend the causes of action alleged against them by API. (See, e.g., §§ 3128, 3153.) We grant the writ petition. The superior court shall vacate its order denying petitioners' ex parte application. It shall enter a new order authorizing petitioners to post a single surety bond in the amount mandated by section 3143 to release the nine mechanic's liens at issue in this litigation.

*Statutory Framework*

■ The mechanic's lien is the only creditor's remedy under California law that stems from a constitutional mandate to create a lien for "the value of such labor done and material furnished" and to provide by statute "for the speedy and efficient enforcement of such liens." (Cal. Const., art. XIV, § 3.) Our mechanic's lien statutes, section 3082 et seq., carry out the constitutional mandate by providing that contractors and other specified workers who provide labor, materials, equipment and other services to a work of improvement, "shall have a lien" on the property on which they worked "for the value of such labor done or materials furnished . . . ." (§ 3110.) The amount of the lien is limited to the "reasonable value of the labor, services, equipment, or

---

[1] All statutory references are to the Civil Code unless otherwise stated.

materials furnished or for the price agreed upon by the claimant and the person with whom he or she contracted, whichever is less." (§ 3123, subd. (a).) It is forfeited by anyone "who shall willfully include in his claim of lien labor, services, equipment, or materials not furnished for the property described in such claim." (§ 3118.)

■ If a single lien is recorded against multiple works of improvement that are owned or were contracted for by the same person, the claimant must designate the amount due on each work of improvement, or lose priority to other liens. (§ 3130.) If the claimant is to be paid a lump sum for multiple works of improvement that are owned or were contracted for by the same person, and the contract does not segregate the amount due for each work of improvement separately, the claimant "may estimate an equitable distribution of the sum due him over all of such works of improvement . . . ." (*Ibid.*) Finally, "if there is a single structure on more than one parcel of land owned by one or more different owners, it shall not be the duty of the claimant to segregate the proportion of material or labor entering into the structure on any one of such parcels; but upon the trial thereof the court may, when it deems it equitable so to do, distribute the lien equitably as between the several parcels involved." (*Ibid.*)

■ A property owner who "disputes the correctness or validity of any claim of lien" may record "a bond . . . , in a penal sum equal to 1 1/2 times the amount of the claim or 1 1/2 times the amount allocated in the claim of lien to the parcel or parcels of real property sought to be released . . . . Upon the recording of such bond the real property described in such bond is released from the lien and from any action brought to foreclose such lien. . . ." (§ 3143.) The surety bond will, in many cases, be the property owner's most effective protection against an unjustified or overstated mechanic's lien. It may not, however, "be available to an individual owner, who will usually be required to post liquid collateral in the amount of the bond." (*Lambert v. Superior Court* (1991) 228 Cal.App.3d 383, 386 [279 Cal.Rptr. 32].) Recording a surety bond "does not deprive the lien claimant of its constitutional right to a lien and instead provides for the speedy and efficient enforcement of the lien. The recording of the release bond does not extinguish the lien; rather, the bond is substituted for the land as the object to which the lien attaches, with the lien transferred from the land to the bond." (*Royster Construction Co. v. Urban West Communities* (1995) 40 Cal.App.4th 1158, 1166 [47 Cal.Rptr.2d 684].)

### Statutory Construction

■ Well-settled rules of statutory construction require us to ascertain and effectuate the intent of the Legislature in enacting the mechanic's lien law.

(*Friedman v. City of Beverly Hills* (1996) 47 Cal.App.4th 436, 441 [54 Cal.Rptr.2d 882].) Initially, we refer to the plain meaning of the words used to ascertain the Legislature's intent, and we give those terms their ordinary, common meaning. (*Ibid.*) "Where a statute is reasonably susceptible to two interpretations, the court must adopt the one that is consistent with the apparent legislative purpose and intent and that, when applied, will result in wise policy rather than absurd or harsh results. (*County of San Diego v. Muniz* (1978) 22 Cal.3d 29, 36 [148 Cal.Rptr. 584, 583 P.2d 109]; *Schuhart v. Pinguelo* (1991) 230 Cal.App.3d 1599, 1609 [282 Cal.Rptr. 144].) When uncertainty exists, the court must consider the consequences that will flow from a particular interpretation. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) In determining legislative intent, we look to the entire statutory scheme of which the provision is a part. (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) '[O]nce a particular legislative intent has been ascertained, it must be given effect even though it may not be consistent with the strict letter of the statute.' (*Kagy v. Napa State Hospital* (1994) 28 Cal.App.4th 1, 6 [33 Cal.Rptr.2d 741].)" (*Downen's Inc. v. City of Hawaiian Gardens Redevelopment Agency* (2001) 86 Cal.App.4th 856, 860 [103 Cal.Rptr.2d 644].)

■ The mechanic's lien statutes are uniformly classified "as remedial legislation, to be liberally construed for the protection of laborers and materialmen." (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 826–827 [132 Cal.Rptr. 477, 553 P.2d 637]; see also *Ivy Trucking, Inc. v. Creston Brandon Corp.* (2000) 84 Cal.App.4th 85, 89 [100 Cal.Rptr.2d 582].) Generally, doubts about their meaning are resolved in favor of the contractor or laborer. (*Solit v. Tokai Bank* (1999) 68 Cal.App.4th 1435, 1442 [81 Cal.Rptr.2d 243].)

In enacting the mechanic's lien statutes, the Legislature intended "to prevent unjust enrichment of a property owner at the expense of a laborer or material supplier." (*Burton v. Sosinsky* (1988) 203 Cal.App.3d 562, 568 [250 Cal.Rptr. 33].) At the same time, the recordation of a mechanic's lien encumbers real property and, at least temporarily, deprives the owner of valuable property rights. (*Connolly Development Inc. v. Superior Court, supra,* 17 Cal.3d at p. 827.) Thus, inherent in the legislative purpose to provide security and a swift remedy for unpaid contractors and laborers is " ' " 'a recognition also of the rights of the owner of the benefited property. It has been stated that the lien laws are for the protection of property owners as well as lien claimants.' " ' " (*Rental Equipment, Inc. v. McDaniel Builders, Inc.* (2001) 91 Cal.App.4th 445, 450 [109 Cal.Rptr.2d 922], quoting *R. D. Reeder Lathing Co. v. Allen* (1967) 66 Cal.2d 373, 379 [57 Cal.Rptr. 841, 425 P.2d 785].)

■ Our mechanic's lien statutes balance these interests by requiring the claimant to provide notice to the property owner, including a reasonably accurate prelien estimate of the amount due under the contract. (§ 3097.) They limit the amount of the lien to the reasonable value of the labor, services, equipment or materials actually furnished by the claimant (§ 3123, subd. (a)), and they provide for the forfeiture of a willfully overstated lien (§ 3118). Property owners who dispute the validity of the lien, or the amount of the lien claim, may release their real property from the lien by posting a surety bond in the statutory amount. (§ 3143.) These features of the statutory scheme protect both property owners and lien claimants because they promote "communication based on real factors and true state of affairs." (*Rental Equipment, Inc. v. McDaniel Builders, Inc., supra*, 91 Cal.App.4th at p. 450.)

## Discussion

API has a single claim to be paid, $79,831.18 plus interest and costs. It has recorded nine separate liens against nine parcels of real property, each for the full amount of that claim, even though it concedes that it can only be paid once. API contends that the final sentence of section 3130 authorizes these duplicative liens because the street that API constructed is "a single structure on more than one parcel of land owned by one or more different owners . . . ." API notes that section 3130 permits the trial court to divide its claim among the various parcels "upon the trial thereof," rather than prior to trial. (§ 3130.)

Petitioners contend the liens should be forfeited under section 3118 because API did not divide its claim among the parcels as contemplated by the first provision of section 3130.[2] They contend the final provision of section 3130, on which API relies, does not apply because the street is not a "structure" and is not "on" any of the parcels encumbered by API's liens. The mechanic's lien statutes do not define the term "structure." Other portions of the Civil Code, however, define it to mean something more akin to a building than a street.[3] Petitioners argue there is no evidence that the street is "on" any of the parcels because it runs adjacent to or between them.

---

[2] "In every case in which one claim is filed against two or more buildings or other works of improvement owned . . . by the same person or on which the claimant has been employed by the same person to do his work or furnish his materials, whether such works of improvement are owned by one or more owners, the person filing such claim must at the same time designate the amount due to him on each of such works of improvement; otherwise the lien of such claim is postponed to other liens." (§ 3130.)

[3] For example, sections 1940, 1940.5, and 1962.5 use the term "structure" in reference to a "dwelling" or "dwelling unit." The Penal Code defines the term as a "building, or commercial or public tent, bridge, tunnel, or powerplant." (Pen. Code, § 450, subd. (a).) Other official documents, including the California Department of Transportation's Highway Design Manual, refer to highways and streets as structures.

Fortunately, the rules of statutory construction and our broad equitable powers (see, e.g., Code Civ. Proc., § 128), relieve us of the obligation to parse the statute with the degree of exactitude suggested by petitioners or to expand it beyond any practical understanding of its "plain meaning," as advocated by API. We can steer a middle course by returning to the Legislature's purpose in enacting the mechanic's lien statutes. That purpose is to secure a contractor's right to receive payment "for the reasonable value of the labor, services, equipment, or materials furnished . . . ." (§ 3123, subd. (a).) It is not to secure that same right nine times over.

We are unwilling to declare API's lien rights forfeited under section 3118 based solely on its insistence that section 3130 requires it to record the duplicative liens to secure the payment of a single debt. Plainly, API is entitled to a mechanic's lien because it constructed a work of improvement for which, it alleges, it has not been paid. Equally plain, we think, is the inequity that results from requiring petitioners and other property owners to post multiple bonds to release duplicative liens, even though there is only one debt. API has presented no evidence or argument indicating that it would be prejudiced by the posting of a single bond in the statutory amount, rather than the nine bonds required by the trial court's ruling. The balancing of equities would obviously differ in a case where the lien claimant demonstrated that it would be prejudiced by a single bond. "Proceedings for the foreclosure of a mechanics' lien are proceedings in equity in which the court will apply equitable principles." (*Burton v. Sosinsky, supra*, 203 Cal.App.3d 562, 572.)

The equitable result here is to secure API's entire claim and give petitioners a realistic opportunity to restore their property rights. Section 3130 provides for that result by allowing a trial court to divide a single lien claim among several parcels. Petitioners seek a different, but no less equitable result: a single bond to release several liens recorded against several parcels reflecting a single claim. Under either scenario, API has security for the payment of its entire claim. The surety bond will not extinguish API's lien or affect its priority. It will only substitute the bond for the land as the object to which the lien attaches. (*Royster Construction Co. v. Urban West Communities, supra*, 40 Cal.App.4th at p. 1166.) At the end of the day, API has the degree of security mandated by the mechanic's lien statutes and petitioners recover their property rights by posting security for the entire debt they allegedly owe to API. This result avoids both the absurdity of requiring multiple bonds to release duplicative liens securing a single debt and the absurdity of forfeiting all security for the payment of that debt.

### Conclusion

Let a writ of mandate issue directing respondent superior court to vacate its order of September 27, 2007, denying petitioners' ex parte application and

directing it to enter a new and different order granting the application and permitting petitioners to record a single bond in the amount mandated by section 3143, to release the nine mechanic's liens at issue in this litigation and recorded by real party in interest on August 12, 2005. The order to show cause, having served its purpose, is discharged. Costs are awarded to petitioners.

Yegan, J., and Perren, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied September 10, 2008, S165684.